**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LILINE FORESTE, *on behalf of herself, FLSA Collective Plaintiffs, and the Class,* <br><br> Plaintiff, <br><br> v. <br><br> KARP SCARSDALE, LLC d/b/a THE AMBASSADOR OF SCARSDALE, and AMBA SHARMA, <br><br> Defendants. | Case No. <br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** <br><br> Jury Trial Demanded |

Plaintiff LILINE FORESTE ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants KARP SCARSDALE, LLC d/b/a THE AMBASSADOR OF SCARSDALE ("Corporate Defendant" or "The Ambassador"), AMBA SHARMA ("Individual Defendant" and together with Corporate Defendant, "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that she and others similarly situated are entitled to recover from

1

Defendants: (1) unpaid wages, including overtime premiums, due to time-shaving; (2) liquidated damages; and (3) attorneys' fees and costs.

2.     Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL") that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime premiums, due to time-shaving; (2) statutory penalties; (3) liquidated damages; and (4) attorneys' fees and costs.

3.     Plaintiff further alleges that Defendants discriminated against her on the basis of her pregnancy, in violation of the New York State Human Rights Law, New York Executive Law § 296 *et seq*. ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL") and brings this action against Defendants to recover: (1) back pay; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.     Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6.     Plaintiff LILINE FORESTE, for all relevant time periods, was a resident of Westchester County, New York.

7.     Corporate Defendant is a domestic limited liability company, duly existing pursuant to, and by virtue of, the laws of the State of New York, with an address for service of process at 34 Shecter Rock Road, Manhasset, New York 11030 and a principal place of business address located at 9 Saxon Woods Road, White Plains, New York 10605.

8.     Individual Defendant AMBA SHARMA is the owner of Corporate Defendant. Individual Defendant exercised functional control over the business and financial operations of Corporate Defendant and over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and Class Members. With respect to Plaintiff, FLSA Collective Plaintiffs, and Class Members, Individual Defendant exercised his power to (and also delegated to managers and supervisors the power to) (i) fire and hire; (ii) determine rate and method of pay; (iii) supervise and control employee work schedules or conditions of employment; (iv) maintain employment records; and (v) otherwise affect the quality of employment. Individual Defendant had ultimate authority over employee-related decisions, including personnel, workplace conditions, payroll, and wage and hour policies concerning Plaintiff, FLSA Collective Plaintiffs, and Class Members.

9.     Defendants own and operate an assisted living facility located at 9 Saxon Woods Road, White Plains, New York 10605 (the "Facility").

10.     At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, and the state laws within which it operates.

11.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

12.     Plaintiff brings claim for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of non-exempt employees, including all housekeepers, direct support professionals, activity assistants, and care givers employed by Defendants in New York State on or after the date that is six (6) years before the filing of the Complaint in this case ("FLSA Collective Plaintiffs").

13.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper overtime premiums for all hours worked. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

14.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

15.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including all housekeepers, direct support professionals, activity assistants, and care givers employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

16.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class Members are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

17.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

18.     Plaintiff's claim is typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of (i) failing to pay proper wages, including overtime premiums at one-and-one half times their hourly rates for hours in excess of forty (40) each workweek, due to time shaving; (ii) failing to provide Class Members with proper wage statements with every payment of wages; and (iii) failing to properly provide wage notices to Class Members, at date of hiring and annually.

19.     Defendants' company-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

20.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

21.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

22.     Defendants and other employers throughout the state violate state's wage and hour statutes. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

23. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of New York State's labor laws;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and Class Members of their pay rates;

e) Whether Defendants paid Plaintiff and Class Members for all hours worked;

f) Whether Defendants failed to properly compensate Plaintiff and Class members for overtime under state and federal laws for all hours worked in excess of forty (40) each week;

g) Whether Defendants practiced a policy of time shaving;

h) Whether Defendants provided proper wage statements to Plaintiff and Class Members; and

i) Whether Defendants provided proper wage and hour notices to Plaintiff and Class Members.

## STATEMENT OF FACTS

*Wage and Hour Claims*:

24.     In or about January 6, 2023, Plaintiff was hired by Defendants as a Housekeeper at The Ambassador Facility located at 9 Saxon Woods Road, White Plains, NY 10605. Plaintiff's employment with Defendants was terminated by Defendants on September 14, 2023.

25.     Throughout Plaintiff's employment with Defendants, Plaintiff was compensated at a rate of sixteen dollars and fifty cents ($16.50) per hour. Plaintiff was paid weekly. Plaintiff was scheduled to work forty (40) hours per week. In addition, Plaintiff was required by Defendants to stay thirty (30) minutes past her scheduled shift on a daily basis. Therefore, Plaintiff actually worked forty-two and a half (42.5) hours per week. FLSA Collective Plaintiffs and Class Members worked similar hours for similar pay as Plaintiff.

26.     Throughout her employment, Plaintiff was time-shaved by Defendants because she was not paid for all hours worked. Defendants had a policy of automatically deducting thirty (30) minutes for a meal break each workday Plaintiff worked. Plaintiff was asked to clock out for lunch. Three (3) times each week, Plaintiff was unable to take a free and clear break because Plaintiff's supervisor Canela [LNU] interrupted her and requested her to work through lunch. However, Plaintiff was still automatically deducted by Defendants for the meal breaks. As a result, Plaintiff was victim of Defendants' policy of failing to compensate her for an additional one-and-a-half (1.5) hours every workweek. FLSA Collective Plaintiffs and Class Members were similarly unable to take a free and clear break while automatically deducted thirty (30) minutes. Plaintiff observed that other employees' meal breaks would get interrupted, as all employees would eat together in a cafeteria, and management would pull people away on an as-needed basis in front of herself or other employees.

27.    At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members were not paid overtime premium for hours worked more than forty (40) hours per week due to time shaving. Defendants knowingly and willfully failed to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members the proper overtime premium rate of time and one half of regular hourly rate for each hour exceeding forty (40) hours per workweek.

28.    Plaintiff's supervisors and managers, Canela [LNU], Julio [LNU], Joe Lopuzzo, and Anila Chama ("Managers"), forced Plaintiff and other employees to stay past their scheduled shifts without compensation.

29.    Due to the above-described time-shaving, Plaintiff's and Class Members' compensable time was shaved by approximately three (3) hours each week. FLSA Collective Plaintiffs and Class Members were similarly not properly compensated for their wages earned, including overtime premiums for all hours worked over forty (40).

30.    Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs and Class Members their full overtime hours.

31.    Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

32.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

33.    Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi*

*Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

34.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

35.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay,

including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

36.     Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

37.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

38.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

39.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on

employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

40.     The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

41.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200*

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

*W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

42.    Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

43.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

44.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

45.    Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

46.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon*, 999 F.2d 1101 at 1106.

47.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent her W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

*Individual Discrimination Claims*:

48.    Defendants discriminated against Plaintiff by failing to provide accommodations and firing her because of her pregnancy.

49.    On August 29, 2023, Plaintiff went to the doctor as she was feeling unwell, experiencing nausea, vomiting, and an inability to eat. The doctor diagnosed Plaintiff as pregnant and provided a note detailing her health condition.

50.    The following day, on August 30, 2023, Plaintiff returned to work, disclosing her pregnancy to Defendants in the hope of securing reasonable accommodations at Defendants' Facility. Instead, Defendants increased Plaintiff's workload upon learning about her pregnancy. Despite her original duties involving tasks like laundry, operating the washing machine and the dryer, and folding clothes, Plaintiff was then assigned more physically demanding labor, including cleaning rooms, sweeping, mopping, scrubbing bathrooms, and taking heavy garbage outside.

51.    On September 13, 2023, Plaintiff had to leave early due to feeling pregnancy induced nausea. The next day, Plaintiff was called to the office, where Defendants' Managers Julio

[LNU], Bob [LNU], and Camila [LNU] were present. Upon being questioned about her condition, Plaintiff submitted a second doctor's note to Manager Bob [LNU] and was instructed to wait outside while the Managers deliberated. After an hour, Defendants informed Plaintiff "You're fired. Go home," with no explanation or documents regarding this decision. Plaintiff was fired due to her pregnancy. There were no prior comments or indications of performance issues.

52.    Besides the abrupt termination, Plaintiff was also denied access to the Facility, preventing her from retrieving personal belongings from her locker, resulting in a loss of approximately $250.

53.    Defendants violated New York State anti-discrimination laws when Defendants altered Plaintiff's job duties, and violated the law again by terminating her employment because she had become pregnant.

54.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

55.    Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

56.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

57.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

58.     At all relevant times, Defendants had gross annual revenues in excess of $500,000.

59.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs for all their hours worked, including overtime hours for hours worked over forty (40).

60.     Plaintiff is in possession of certain records concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs. Further records concerning these matters should be in the possession and custody of the Defendants. Plaintiff intends to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

61.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all overtime premiums when Defendants knew or should have known such was due.

62.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

63.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

64.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime premiums, and an equal amount as liquidated damages.

65.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

66.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

67.     At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the NYLL, §§2 and 651.

68.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members the full amount wages owed, including overtime premiums for hours worked over forty (40), in violation of the NYLL, including §198, due to Defendants' policy of time shaving.

69.     Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually thereafter, to all non-exempt employees per requirements of the NYLL.

70.     Defendants failed to provide proper wage statements with correct payment as required by NYLL § 195(3).

71.     Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid overtime premiums, reasonable attorneys' fees, interest, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## DISCRIMINATION IN VIOLATION OF THE
## NEW YORK STATE HUMAN RIGHTS LAW
### (New York State Executive Law § 296 *et seq.*)

72.    Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

73.    The New York State Human Rights Law ("NYSHRL") provides: "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." New York State Executive Law § 296(1)(a).

74.    The New York State Human Rights Law not only prohibits sex discrimination generally but also makes it "an unlawful discriminatory practice for an employer … to refuse to provide reasonable accommodations to the … pregnancy-related conditions … of an employee." N.Y. Exec. Law § 296(3)(a)-(b).

75.    Here, Plaintiff was discriminated against because she was pregnant.

76.    Defendants' conduct was willful or undertaken with reckless disregard of Plaintiff's protected rights under the NYSHRL.

77.    As a direct and proximate result of Defendants' unlawful acts in violation of NYSHRL, Plaintiff has suffered economic harm as well as severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety,

loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and relief, including punitive damages and attorneys' fees.

78.    Due to Defendants' violations under the NYSHRL, Plaintiff is entitled to recover from Defendants: (1) back wages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

## COUNT IV

### DISCRIMINATION IN VIOLATION OF
### NEW YORK CITY HUMAN RIGHTS LAW

79.    Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

80.    The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment providing that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

The New York City Administrative Code § 8-107(1).

81.    At all relevant times, Defendants employed at least four (4) persons. Plaintiff was an employee and qualified person within the meaning of the NYCHRL and Defendants are the covered employer under the NYCHRL.

82.    Here, Plaintiff was discriminated against because she was pregnant.

83.    Defendants operated a business that discriminated against Plaintiff on the basis of her pregnancy in violation of the NYCHRL. The New York City Human Rights Law makes it "an unlawful discriminatory practice" for any private employer to refuse a reasonable accommodation

to an employee for "pregnancy, childbirth or related medical condition." N.Y.C. Admin. Code §

8-107(22)(a).

84.     Under the NYCHRL, an employer is liable for the discriminatory conduct by an

employee, agent or independent contractor. The NYCHRL provides in relevant part:

> (a) An employer shall be liable for an unlawful discriminatory practice based upon
> the conduct of an employee or agent which is in violation of any provision of this
> section other than subdivisions one and two of this section.
> (b) An employer shall be liable for an unlawful discriminatory practice based upon
> the conduct of an employee or agent which is in violation of subdivision one or two
> of this section only where:
>> (1) the employee or agent exercised managerial or supervisory
>> responsibility; or
>> (2) the employer knew of the employee's or agent's discriminatory conduct,
>> and acquiesced in such conduct or failed to take immediate and appropriate
>> corrective action; an employer shall be deemed to have knowledge of an
>> employee's or agent's discriminatory conduct where that conduct was
>> known by another employee or agent who exercised managerial or
>> supervisory responsibility; or
>> (3) the employer should have known of the employee's or agent's
>> discriminatory conduct and failed to exercise reasonable diligence to
>> prevent such discriminatory conduct.

Administrative Code § 8-107(13)

85.     Here, the prerequisites haves been satisfied, since Defendants fired Plaintiff shortly

after being aware of her pregnancy.

86.     Defendants' conduct was willful or undertaken with reckless disregard of Plaintiff's

protected rights under the NYCHRL.

87.     As a direct and proximate result of Defendants' unlawful acts in violation of

NYCHRL, Plaintiff has suffered economic harm as well as severe mental anguish and emotional

distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety,

loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled

to an award of monetary damages and relief, including punitive damages and attorneys' fees.

88.    Due to Defendants' violation under the NYCHRL, Plaintiff is entitled to recover from Defendants: (1) back wages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Plaintiff and Class Members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the labor laws of New York;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid wages, including overtime premiums due under the FLSA and the State wage laws of New York;

d.    An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

e.    An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay all wages, including overtime premiums pursuant to NYLL;

f.    An award of statutory penalties as a result of Defendants' failure to comply with the FLSA and state law wage notice and wage statement requirements;

g.    An award of back pay due under NYSHRL, and the NYCHRL;

h.    An award of compensatory damages and punitive damages due under NYSHRL, and NYCHRL;

    i.   Designation of Plaintiff as a Representative of the FLSA Collective Plaintiffs;

    j.   Designation of this action as a class action pursuant to FRCP 23;

    k.   Designation of Plaintiff as a Representative of the Class; and

    l.   Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: February 14, 2024

Respectfully submitted,

By:    */s/ C.K. Lee*
C.K. Lee, Esq.
LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiff and the Class*